## COURT OF APPEALS,

### December 31, 1912.

## THE PEOPLE v. FREDERICK A. POULIN.

### (207 N. Y. 73.)

(1.) TRIAL—VERDICT—APPELLATE COURTS CANNOT REVERSE JUDGMENT OF CONVICTION BECAUSE JURY HAS BELIEVED ONE SET OF WITNESSES RATHER THAN ANOTHER.

The fact that a jury in a criminal case has chosen to believe one set of witnesses rather than another set, upon an issue where the conflict between them is irreconcilable, affords no ground in and of itself for interfering with the verdict. To justify a reversal on the facts under such circumstances the appellate court must be able to detect, some reason why the version which has been adopted by the jury should have been rejected.

(2.) SAME—CHARGE—WHEN JUDGMENT WILL NOT BE REVERSED BECAUSE. CHARGE OF TRIAL JUDGE MIGHT HAVE BEEN DIFFERENT OR IMPROVED..

When a trial closes under circumstances which show that counsel representing the defendant are satisfied with the charge, the resulting judgment should not be reversed simply because in a calm consideration of the case it may seem that the charge could have been improved. by a fuller or different review of the evidence.

(3.) SAME.

At the close of the charge on the trial of defendant for murder in, the first degree, counsel for defendant presented a series of objections to what the district attorney had said, accompanied by specific requests to charge the jury that they must disregard the matter to which attention was thus called; the trial judge charged as requested, except, where he could not recall the evidence, and then he left it to the jury to say whether the district attorney had stated it correctly. This, was the full measure of relief to which the defendant was entitled.

(4.) SAME.

Where no jurors sat in the cause with whom the defendant was not satisfied, it is unnecessary to determine whether there were errors in, their examination.

APPEAL from a judgment of the Supreme Court, rendered November 9, 1911, at a Trial Term for the county of Rens-

selaer, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*George E. Sands*, for appellant.   In his closing address the prosecuting officer used immoderate, intemperate and inflammatory language; indulged in unjustifiable and unwarranted vituperation and abuse of the defendant; departed, at times, entirely from the evidence and drew unfair and unwarranted inferences therefrom; made numerous misstatements, or false statements, regarding the same, and unjustifiable and unfounded charges against the defendant and his counsel; made glaring appeals to the prejudices and passions of the jury, and conducted himself generally in such a manner as to unfairly and unwarrantably prejudice the defendant's case and interests in the minds of the jury; all of which was wrongful and unlawful and in violation of the defendant's right to a fair and impartial trial.   (People v. Fielding, 158 N. Y. 551; People v. Mull, 167 N. Y. 247; People v. Wolf, 183 N. Y. 464; People v. Greenwall, 115 N. Y. 520; Happern v. N. El. R. R. Co., 16 App. Div. 90; People v. Doyle, 58 Hun, 535; People v. Barker, 62 Hun, 16; People v. McGraw, 72 N. Y. Supp. 66; Williams v. B. E. R. R. Co., 126 N. Y. 97, 102; People v. Corey, 157 N. Y. 332.)   The failure on the part of the learned trial judge to marshal, analyze, discuss and present the evidence to the jury fairly and comprehensively was prejudicial to the defendant.   (People v. Smith, 7 N. Y. Supp. 841; 55 Hun, 606; People v. Cassala, 6 App. Div. 386; Comrs. of Pilots v. Clark, 33 N. Y. 267; People v. Fanning, 131 N. Y. 659; People v. Leach, 146 N. Y. 396.)   The court erred in its rulings on questions that arose during the examination of talesmen as to their qualifications to act as jurors.   (People v. McLaughlin, 150 N. Y. 381; People v. McQuade, 110 N. Y. 284.)

*Clarence E. Akin, District Attorney,* for respondent. There was ample evidence to justify the verdict of the jury that the shooting was committed by the defendant, and not by the deceased's wife, Annie Leonard. (People v. Boggiano, 179 N. Y. 267; People v. Filippilli, 173 N. Y. 509; People v. Schmidt, 168 N. Y. 568; People v. Kennedy, 159 N. Y. 346; People v. Place, 157 N. Y. 584; People v. Southerland, 154 N. Y. 345; People v. Ferrara, 199 N. Y. 414; People v. Cascone, 185 N. Y. 317; People v. Sanducci, 195 N. Y. 361.) There was no error committed by the court in his rulings upon the selection of the jury. (People v. Scott, 153 N. Y. 40; People v. Larubia, 140 N. Y. 88; Cox v. People, 80 N. Y. 501.) The remarks of the district attorney in summing up were justified by the evidence. (People v. Wolf, 107 App. Div. 449; People v. Scanlon, 132 App. Div. 528.)

WILLARD BARTLETT, J.:

At about six o'clock on the morning of August 6th, 1911, Charles Leonard was shot to death at his residence in the hamlet of Brookview, near Castleton in Rensselaer county. Frederick Arthur Poulin was speedily indicted for the homicide and after a carefully conducted trial has been found guilty of murder in the first degree. According to the testimony of Frederick Arthur Poulin himself, testifying in his own behalf, the fatal shooting was really done by Anna Leonard, the wife of the victim. If the verdict of the jury in this case is in accordance with the fact, the defendant is not only a murderer but a perjurer also; for if he is guilty, it necessarily follows that he has given false testimony attributing the murder to another in order to save himself.

The Leonards were a young married couple, with two infant children, and their circumstances were so straitened that the advent of Poulin, then a friend of both husband and wife, as a boarder, at five dollars a week, was welcomed as helpful in

the economies of the household. The husband, however, appears to have been a man of jealous disposition who after a while became suspicious of his wife's fidelity, although, as she asserts, without just cause until he had driven her from home by his quarrelsomeness and false accusations, culminating in a personal assault upon Poulin with a piece of lead pipe. Driven from Brookview by the differences culminating in this assault, Poulin and Mrs. Leonard then went to Schenectady where they occupied rooms together for a short time holding themselves out as husband and wife. Mrs. Leonard insists that up to this period her relations with Poulin had been blameless. Leonard, who seems not to have been fully informed of the details of this Schenectady episode, besought his wife to return to their home at Brookview, which she consented to do; and it was on the morning after her return that the homicide occurred.

According to Mrs. Leonard's testimony she had no expectation that Poulin would visit the house on that night. Her husband arose before she did and went downstairs. While dressing she heard a noise on the ground floor, and then her husband cried, " Oh! Ann, he has shot me! and rushed upstairs, with the back of his shirt on fire, pursued by Poulin with a revolver in his hand which he snapped at Leonard's head several times after they reached her presence. To escape his pursuer Leonard tried to get out of the bedroom window, which opened upon the slanting roof of a veranada; Poulin shut the window down upon Leonard's legs, and then picked up his pistol which had fallen upon the floor and went downstairs. Mrs. Leonard raised the window to succor her husband; his body, thus freed from the hold of the lowered sash, rolled from the roof of the piazza down to the ground outside; and there Leonard was found shortly afterward, dead, with two mortal bullet wounds in his back. This is the story of the homicide presented by the prosecution. As a sequel Mrs. Leonard tells

us that immediately after she followed Poulin downstairs and discovered that he had killed her husband, she noticed when she came back into the house that Poulin was bleeding from a wound in the neck. He exclaimed to her: "Shut the door; I have cut my throat." The wound was speedily sewed up, however, and Poulin was taken into custody.

The picture drawn by the defense is very different.

Poulin testifies that when Mrs. Leonard concluded to return to her husband at Brookview, she suggested that he should come down there on that evening and "have it out" or come to an understanding with him, meaning presumably thereby to dissipate Leonard's jealous notions; that he reached the Brookview house too late to rouse the inmates and, therefore, made his way to the room he had previously occupied therein as a boarder; that he went to sleep and was aroused by Leonard, who was endeavoring to cut his throat as he slept; that he struggled with Leonard, whom he finally overcame, so that Leonard fled; and that he then heard two shots fired on the stairs, which Mrs. Leonard immediately afterward told him had been fired by her. Believing that he himself was about to die from the cuts in the throat inflicted, as he says, by Leonard, Poulin admitted to the first comers that he had shot the husband in order, as he further says, to prevent the wife from being suspected of the murder, and, after his arrest, he made a more elaborate confession to the same effect in the jail. This he wholly retracted on the witness stand, explaining that while he was willing to shield Mrs. Leonard at a time when he felt sure he was going to die, he would not give his life to save hers, now that he had recovered from his own wounds.

The issue of fact presented in this case was precisely such as a jury, under the English and American system of jurisprudence, is properly believed to be best qualified to determine. Although neither Mrs. Leonard nor Poulin profess to have seen the actual shooting, it is manifest that if Mrs. Loenard tells

the truth Poulin killed her husband, while if 'Poulin tells the truth she killed him herself. The case resolved itself into a question of credibility, and there is nothing in the record to indicate that the jury passed upon that question incorrectly. The fact that a jury in a criminal case has chosen to believe one set of witnesses rather than another set, upon an issue where the conflict between them is irreconcilable, affords no ground in and of itself for interfering with the verdict. (See People v. Ferrara, 199 N. Y. 414, 25 N. Y. Crim. 121.) To justify a reversal on the facts under such circumstances, the appellate court must be able to detect some reason why the version which has been adopted by the jury should have been rejected. We can find no such reason here.

In the brief of 326 printed pages submitted to us in behalf of the appellant, 174 pages are devoted to a discussion of the facts. The points of law are presented in the record by excep-We deem it necessary to discuss only those which are most tions, some of which are argued in the remainder of the brief. emphasized by counsel, although all have been carefully considered.

Much complaint is made of the language used by the district attorney (not the present public prosecutor) in his closing address to the jury. This is denounced, in terms which approach the verge of professional propriety, as having been made up of false statements or misstatements regarding the evidence, unwarranted vituperation and abuse of the defendant, unjustifiable charges against his counsel and glaring appeals to the prejudices and passions of the jury. If the district attorney's summing-up were really of this character and the court had refused to take any action in reference thereto, when its action was properly invoked, the defendant might have a substantial grievance in this respect; but such does not appear to be the case here. At the close of the charge the learned counsel for the defendant presented a long series of objections to what the

district attorney had said accompanied by specific requests to charge the jury that they must disregard the matter to which attention was thus called; and in every instance the trial judge charged precisely as requested, except where he could not recall the evidence, and then he left it to the jury to say whether the district attorney had stated it correctly. This was the full measure of relief to which the defendant was entitled as matter of strict legal right; and in the light of this record we hardly see what more the court could have done in the exercise of its discretion to do away with any untoward effect of exaggeration or intemperance in argument. The proposition that we ought to grant a new trial in this case on account of the alleged misconduct of the district attorney requires no further consideration.

The jury were carefully and correctly instructed as to the law applicable to the facts of the case by the learned trial judge; so carefully and correctly that no exception whatever was taken to the charge. Counsel complains, however, of the failure of the court " to marshal, analyze, discuss and present the evidence to the jury fairly and comprehensively," and argues that this failure was so prejudicial to the defendant as to constitute a ground for reversal; and this, notwithstanding that he neglected to call the attention of the trial judge to any omission in this respect and made no request whatever indicting a desire on his part for any further discussion or presentation of the facts. When a trial closes under circumstances like these which show that counsel representing the defendant are satisfied with the charge, it would be going further than any appellate court has ever gone to reverse the resulting judgment simply because in a calm consideration of the case it may seem that the charge could have been improved by a fuller or different review of the evidence. The language of Judge Peckham in People v. Fanning (131 N. Y. 659, 663, 8 N. Y. Crim. 363), is quoted, where he said: " In a criminal case we think the judge has the right,

and indeed it is his duty to present the evidence to the jury in such light and with such comments that the jury may see its relevancy and pertinency to the particular issue upon which it was admitted, and thus be better qualified to appreciate its character and weight and to determine its credibility." This was said in justification of the action of the trial judge in assisting the jury to deal with the facts intelligently and was by no means intended to imply that a charge would be fatally defective, as counsel seems to suppose, because the judge did not marshal the evidence more fully, when no dissatisfaction with the charge in that regard was manifested at the time.

As to the alleged errors upon the examination of talesmen, it is not necessary to determine whether they were really errors or not, inasmuch as no juror sat in the case with whom the defendant was not satisfied. His challenge was withdrawn in each instance before the juror was sworn, and his peremptory challenges were not exhausted.

There is no ground on which we should be justified in interfering with this judgment, and it should, therefore, be affirmed.

CULLEN, Ch. J., HAIGHT, VANN, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment of conviction affirmed.