JAMES N. RICHARDS, Respondent, v. ERNST WIENER COMPANY, Appellant.

Corporations — contract — action to enforce contract of corporation for repurchase of its own stock — burden is upon corporation to prove that there are no surplus profits out of which repurchase can be made.

In an action brought upon a contract made by a corporation to repurchase its own stock, which action is defended upon the ground that the contract is not enforceable by reason of the provisions of section 664 of the Penal Law making it a misdemeanor for a director to apply any of the funds of a corporation "except surplus profits" to that purpose, the burden is upon the corporation of showing that there are no surplus profits out of which the purchase can be made.

*Richards* v. *Wiener Co.*, 145 App. Div. 353, affirmed.

(Argued December 2, 1912; decided December 31, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 5, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. Woolsey Shepard* and *Woolsey A. Shepard* for appellant. The contract in question provided for the doing of an illegal act by the defendant company and was, therefore, void, and the illegality being apparent upon the face of the contract, the complaint of the plaintiff, of which it is a part, should have been dismissed. (*Matter of Walker & Hocking*, 57 L. T. [N. S.] 763; *Burke* v. *Smith*, 16 Wall. 370; *Coffin* v. *Greenlees*, 38 Ohio, 275; *Barton* v. *Port Jackson Co.*, 17 Barb. 397; *Foley* v. *Speir*, 100 N. Y. 552; *Hess* v. *Allen*, 24 Misc. Rep. 393; *Burger* v. *Koelsch*, 77 Hun, 44; *Hart* v. *City Theatres Co.*, N. Y. Law Jour., April 5, 1911; *Wright* v. *Delafield*, 25 N. Y. 266; *Burke* v. *Krank*, 75 App. Div. 191; *Home Ins. Co.* v. *Western*, 51 N. Y. 93; *Beattie* v. *Marine Ins. Co.*, 2 Johns. 109.) Assuming

that the burden of proof was on the defendant to show that it had no surplus profits, there was competent evidence offered by the defendant to show that it had no surplus profits, and the exclusion of such evidence by the court constituted reversible error. (*Thompson* v. *Hall,* 45 Barb. 214; *Iselin* v. *Peck,* 2 Robt. 629.) Assuming that the contract was one for a subscription only to shares of stock in the defendant company, nevertheless, as such agreement would be for a subscription in the form otherwise than that authorized by law, the contract was void and the complaint of the plaintiff should have been dismissed. (*Meyer* v. *Blair,* 109 N. Y. 600; *Armstrong* v. *Danahy,* 75 Hun, 405; *Yonkers Gazette Co.* v. *Jones,* 30 App. Div. 316.)

*Elbridge L. Adams* for Manufacturers' Commercial Company, intervening. It is against the public policy of this state to permit a domestic corporation to purchase its own stock, except in payment of a debt. (Morawetz on Priv. Corp. § 112; Machen on Corp. 7§§ 626, 628; *Trevor* v. *Whitworth,* L. R. [12 App. Cas.] 409; *Barton* v. *P. J., etc., P. R. Co.,* 17 Barb. 397; *City Bank* v. *Bruce,* 17 N. Y. 507; *Vail* v. *Hamilton,* 85 N. Y. 453; *Moses* v. *Soule,* 63 Misc. Rep. 203; *Booth* v. *Dodge,* 62 App. Div. 23; *Joseph* v. *Raff,* 82 App. Div. 47; *Beveridge* v. *N. Y. El. R. R. Co.,* 112 N. Y. 22; *Leslie* v. *Lorillard,* 110 N. Y. 519; *People's Bank* v. *St. A. R. C. Church,* 109 N. Y. 512.)

*Nathan D. Stern* for respondents. The agreement sued on is not one for the purchase by a corporation of its own stock, but rather one for the conditional sale thereof. Therefore the statute pleaded as a defense does not apply. (*Vent* v. *D. C. & S. Co.,* 64 Minn. 307; *Browne* v. *St. P. P. Works,* 62 Minn. 90; *Ophir Consol. Mines Co.* v. *Brynteson,* 143 Fed. Rep. 829.) Assuming that the contract sued on is illegal because in contravention of section 594 of the Penal Code (now section 664 of the Penal Law), the defendant was, nevertheless, required to plead and

prove such illegality as an affirmative defense. (*Milbank v. Jones*, 127 N. Y. 370; *Dunham* v. *Hastings Pavement Co.*, 56 App. Div. 244; *Strodl* v. *Farish-Stafford Co.*, 145 App. Div. 406; *Miller* v. *Roessler*, 4 E. D. Smith, 234; *Brown* v. *Brown*, 34 Barb. 523; *Matter of Castle Braid Co.*, 145 Fed. Rep. 224; *Railway Co.* v. *McCarthy*, 96 U. S. 258; *Express Co.* v. *R. R. Co.*, 99 U. S. 199; *C. C. Bank* v. *Risley*, 19 N. Y. 369.) In the absence of statutory prohibition a corporation may purchase its own stock. There is no statute which in terms provides that the contract of a corporation to purchase its own stock is illegal or void. (*City Bank of Columbus* v. *Bruce*, 17 N. Y. 507; *Vail* v. *Hamilton*, 85 N. Y. 458; *Strodl* v. *Farish-Stafford Co.*, 145 App. Div. 406; *Booth* v. *Dodge*, 60 App. Div. 27; *Moses* v. *Soule*, 63 Misc. Rep. 203; *Irwin* v. *Currie*, 171 N. Y. 409; *Akers* v. *M. L. Ins. Co.*, 59 Misc. Rep. 273; *Nat. Bank* v. *Matthews*, 98 U. S. 621.)

*Julien T. Davies* and *Herbert Barry* for George M. Black et al., as surviving trustees, intervening. A corporation has unrestricted power to purchase its own stock, unless the transaction be explicitly prohibited by statute — always provided no rights of creditors be affected and that the transaction be not tainted with fraud. (*City Bank* v. *Bruce*, 17 N. Y. 507.) The transaction itself, *i. e.*, the purchase of stock, is not made invalid by the New York statutes, although there are certain prohibitions imposed upon directors. (*Matter of Castle Braid Co.*, 145 Fed. Rep. 224; *Moses* v. *Soule*, 63 Misc. Rep. 203; *Harris* v. *Runnels*, 12 How. [U. S.] 79; *Fritts* v. *Palmer*, 132 U. S. 282; *Learned* v. *Geer*, 139 Mass. 31; *Bowditch* v. *N. E. L. Ins. Co.*, 141 Mass. 293; *Niemeyer* v. *Wright*, 1 Matthews [Va.], 239; *Watrous* v. *Blair*, 32 Iowa, 58; *Pangborn* v. *Westlake*, 36 Iowa, 546; *Hanover Nat. Bank* v. *First Nat. Bank*, 109 Fed. Rep. 421.) The statutes should not be so construed as to enable a corporation to take an unconscionable advantage of a third person who has dealt with it in good faith.

(*W. L. Co.* v. *Greene, etc., Co.*, 69 L. R. A. 968; *Joseph* v. *Raff*, 82 App. Div. 47; *L. C. Bank* v. *Townsend*, 139 U. S. 67; *Matter of T. H. Bunch Co.*, 180 Fed. Rep. 519; *Dunlop* v. *Mercer*, 156 Fed. Rep. 545; *Waterbury* v. *McKinnon*, 146 Fed. Rep. 737; *Nat. Bank* v. *Stewart*, 107 U. S. 676.)

HAIGHT, J. This action was brought to recover the sum of $3,000 and interest thereon, claimed to be due from the defendant under a written contract, which is as follows:

"NEW YORK, *October* 24, 1908.

"Mr. J. N. RICHARDS,

"New York City:

"DEAR SIR.— We beg to confirm our agreement with you as follows:

"(1) You subscribe for 100 shares of our 6% preferred stock of a par value of $100.00 at the price of $10,000 and you agree to pay not less than $3,000.00 immediately ($1,000.00 at the time of signing this contract, $2,000.00 on or before November 10th, 1908), not less than $5,000.00 within 6 months after date and the balance within 3 months thereafter, that is 9 months from date.

"(2) In consideration of this purchase of our stock, we agree to employ you in our business and you agree to devote to same your entire time exclusively and to use your very best efforts to further its interest directly or indirectly. We agree to allow you a salary of $50.00 per week and a commission on all the new business that you bring us, that is, on all orders from customers, whose first order has been obtained by you. This commission to be 10% on the net profits of such orders. Such profits to result in deducting from the sales price all the expenses had with the order, as f. i., the cost price of the material figures in the regular way, discounts, freight and cartage allowances, etc. Among the expenses on the order to be counted the interests from date of expenditure until date of payment by the customer, all special expenses such as telegrams, long distance telephone messages, traveling expenses if incurred especially, shares of profit

to manufacturers if any, and outside commissions, but no general office expenses.

" (3) As soon as you have paid the second installment of $5,000.00 on the above purchase of preferred stock, we will guarantee you the above commission in addition to the salary with $600.00 per year and we will sign a contract with you on this basis, to be good for not less than 2 years from the date of this letter.

"If, however, you should fail to pay the second installment, we will have the option to discontinue your employment, and if in this case you should not want to have the first installment paid by you considered as the purchase price in full for 30 shares of our preferred stock, then we shall repurchase these 30 shares of stock from you at par within 6 months thereafter. If, however, at any time during the first 6 months or at the end of same you should discontinue your services of your own account and fail to pay in the $5,000.00, then the first installment of $3,000.00 paid in by you shall be considered as the purchase price in full for 30 shares of our preferred stock without any obligation on our part to repurchase same.

" In case this agreement should be terminated the commission will be paid on all orders coming under this agreement, such as have been received in our office, before the date of expiration of this contract whether accepted and executed before this date or thereafter.

"Please acknowledge this agreement, and oblige,
"Yours very truly,
"ERNST WIENER COMPANY,
"WALTER J. BRIGGS, *Sec'y.*"

It appears that the plaintiff thereupon paid to the defendant the sum of $3,000, being the first of the two sums mentioned in the contract, and then entered the employment of the defendant and continued therein until the 14th day of August, 1909. He did not, however, at the expiration of the six months pay the additional sum of $5,000 upon the contract, but notified the defendant

that he was unable to do so. Thereupon and on the 14th day of August, 1909, the defendant wrote the plaintiff as follows: "After a fair trial we have come to the conclusion that you are not competent to fill the position now occupied by you nor do the results warrant our keeping you, and we, therefore, beg to notify you that with the payment of this week's salary your services will not be required after this date." (Signed by the defendant company.) At the same time the defendant company drew a certificate for thirty shares of preferred capital stock of the corporation and delivered the same to the plaintiff. Thereupon the plaintiff wrote the defendant as follows: "Having received from you under date of the 14th notice that my services were no longer required by your Company, I beg to notify you that I shall require you to repurchase from me thirty (30) shares of your preferred stock for which I have heretofore paid you the sum of Three Thousand ($3,000) Dollars, but which stock was never delivered to me, as I do not wish to have the money paid in by me under the contract between us bearing date October 24th, 1908, considered as the purchase price of said thirty (30) shares." The chief defense interposed in the case is to the effect that the provision of the contract with reference to purchasing back the stock was void and contrary to the provisions of the Penal Law and is contrary to public policy and to the law. Section 664 of the Penal Law, formerly section 594 of the Penal Code, provides as follows:

"A director of a stock corporation, who concurs in any vote or act of the directors of such corporation, or any of them, by which it is intended: * * *

" 5. To apply any portion of the funds of such corporation, except surplus profits, directly or indirectly, to the purchase of shares of its own stock, is guilty of a misdemeanor."

We are much impressed with the contention that the contract in this case, properly construed, amounts merely

to an option to purchase stock on the part of the plaintiff, and the advancement on such option of $3,000 upon condition that he be given employment by the corporation at the price agreed upon, and that in case the company terminated such employment he had the right to demand the return of the money that he had advanced. But we have thought it wise in this case to follow the Appellate Division. Assuming, therefore, that under the contract the plaintiff had the title to the stock which he could resell but for the provision of the Penal Law, the defendant nevertheless was required to prove its invalidity, under the law referred to. Upon the trial there was an attempt to show that the corporation had no surplus profits out of which the purchase of the stock could be made. But the evidence offered upon this subject was not proper and consequently was excluded by the trial court. We, therefore, have a case in which the corporation has failed to show that it did not possess surplus profits out of which the stock could be purchased. As was said by SCOTT, J., below: "The law will not presume, unless forced to do so, that a person intends to do an illegal act. It will not, therefore, presume that the parties intended to make an illegal contract. The contract itself, therefore, was perfectly legal subject to certain limitations upon its enforcibility. If when the time came defendant had a sufficient surplus the contract would be enforced. If it had not the contract could not be enforced. In defending against plaintiff's attempt to enforce it the burden rested upon defendant to show that it would be illegal to do so, for there is no presumption one way or the other as to the existence of a surplus. The defendant assumed this burden but failed in sustaining it,   *   *   *."

The judgment appealed should be affirmed, with costs.

CULLEN, Ch. J., VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; COLLIN, J., absent.

Judgment affirmed.