## In re TICHENOR–GRAND CO.

## Ex parte HARTIGAN.

(District Court, S. D. New York. February 28, 1913.)

CORPORATIONS (§ 82*)—CONTRACT WITH SUBSCRIBER TO REPURCHASE STOCK—. VALIDITY.

> Under Penal Law N. Y. (Consol. Laws 1909, c. 40) § 664, which prohibits a corporation from purchasing its own stock, except out of surplus, a contract by a corporation with a subscriber to its stock, where the stock is issued and paid for, to repurchase the same after a stated time on notice of the subscriber's election, is invalid, and not enforceable as against a trustee in bankruptcy of the corporation.

> [Ed. Note.—For other cases, see Corporations. Cent. Dig. §§ 285†295 Dec. Dig. § 82.*]

In the matter of the Tichenor-Grand Company, bankrupt. On review of order of referee disallowing claim of Hubert M. Hartigan. Affirmed.

On July 25, 1908, the bankrupt company wrote to claimant the following letter:

> "In consideration of your taking two hundred and fifty shares, twenty-five thousand dollars, of the preferred seven per cent. stock of this company, we agree to give you a position at a remuneration of five hundred pounds per annum and a commission of ten per cent. on all horses you sell. If you wish to leave the company at the end of three years from date, we agree to take back your shares at par (twenty-five thousand dollars) with a sixty days' notice."

In accordance with this notice, claimant paid to the bankrupt $25,000, and there was issued to him a stock certificate for 250 shares of the preferred stock, and he was carried upon the books like any other stockholder. On March 25, 1911, the company was adjudicated a bankrupt, up to which time claimant had never given notice, oral or written, that he wished to give back his stock.

William Byrd, of New York City, for petitioner.

Goldsmith, Cohen, Cole & Weiss, of New York City, for trustee.

HAND, District Judge (after stating the facts as above). Since the result is the same, it is better to dispose of this case upon the question of substantive law raised, rather than to let it turn upon the question whether it is contingent within the meaning of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

It is no doubt quite true that courts have at times enforced contracts for the repurchase of corporate stock when the condition or option was part of the original subscription, as here. Ophir Consolidated Mines v. Brynteson, 143 Fed. 829, 74 C. C. A. 625. The trustee says that the case involved only treasury stock; but there is no evidence that it was paid up, nor did the court in any sense rely upon such an assumption. Moreover, if a corporation which supposes itself solvent may buy its own stock (Re Castle Braid Co. [D. C.] 145 Fed. 224), I

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

can see no reason why it may not buy it from an original subscriber under an option of resale originally reserved to him. I must say that all such rights appear to me to be quite contrary to a reasonable protection of creditors, unless they are limited to purchases which leave the original capital intact—i. e., purchases from surplus—because they necessarily result in keeping up the appearance of a capital which has been actually depleted. If a corporation has received property into its treasury of the value of its authorized shares, that is no doubt subject to the vicissitudes of its enterprises, which will be represented by public knowledge of its success or of the value of its shares. If, however, it purchases its own shares, this affects neither the value of the other shares, the success of its enterprises, nor the amount of its apparent share capital. It is merely a method of secret distribution, against the deceit of which its creditors have absolutely no means of protection. The fund which they have the right to rely upon has been surreptitiously taken from them. It seems to me very little relief against the evils which such a right causes to limit it to cases where the corporation is thought to be solvent. It is a strange thing, I think, that there have been cases which permit the practice, which seems to me to be inevitably mischievous commercially.

Now, section 664 of the Penal Law (Consol. Laws 1909, c. 40) forbids the purchase of stock, except out of surplus, and so aims at just this evil. It is quite clear that this would have made illegal Hartigan's right of resale, had it not been incorporated into the original purchase, and I do not understand that he claims the contrary. What he does say is that, since he reserved the option when he bought the stock, the statute does not apply. If one considers the evil at which the statute was directed, I think it appears plainly enough that this makes a difference only in case the stock is not treated as issued to the buyer until the time for the election has passed. If he is entered upon the books as a stockholder, and if his shares figure as a part of the share capital actually issued, certainly all the evils which the statute means to forbid will arise from allowing him thereafter secretly to deplete the treasury of the company, as would arise if he had reserved no right to do so. Creditors have no means of knowing what part of the shareholders have reserved this right, and how many may dip into the corporate treasury, or, as in this case, come in to share with them in insolvency. From the reason of the thing, therefore, the fact should make no difference.

In Richards v. Wiener Co., 207 N. Y. 59, 100 N. E. 592, the Court of Appeals had before it a contract somewhat similar to this, except that no stock was issued to the subscriber, and his shares apparently never figured as part of the issued share capital. The court noticed this fact, and seemed disposed to treat the contract as a contract of purchase, and not as a purchase itself, which, of course, avoids the difficulty of the statute altogether. In such a case there has never been any stock issued, and so there can be none purchased. The case at bar cannot possibly be treated in that way, because Hartigan became in every sense of the word a full stockholder. Had the court in Richards v. Wiener Co., supra, so construed the contract, that case could not be an authority for me; but they did not, for they went on to assume that

the plaintiff had title to the stock. They then adopted another construction of the contract, under which they limited its application to a purchase out of surplus profits, thus avoiding the statutes. Now, it is too obvious for discussion that they felt the necessity for adopting such a construction, which, with deference, was certainly not a very apparent one, only because they recognized that otherwise the contract would be illegal. Thus they say (207 N. Y. 65, 100 N. E. 593):

"He could resell, but for the provisions of the Penal Law.",

Again, quoting Scott, J., below:

"If, when the time came, defendant had a sufficient surplus, the contract would be enforced. If it had not, the contract could not be enforced."

Surely here is a ruling of the highest court of New York as to the interpretation of a statute of that state which controlled this transaction. I do not mean that the statute was necessary to the result, and if nothing is authoritative which is not necessary, then this is obiter. I do mean that it is authoritative in the sense that the court could not have treated the case in the way it did, or used the language as it did, unless its interpretation of the statute had been in accord with the trustee's contention.

However, the creditor asserts that, even though the contract was illegal, he may recover in quasi contract. This I must say seems to me quite impossible. The very purpose of making the contract illegal is to prevent the shareholder from taking money out of the corporate treasury. It would be an absurd result to allow him to do it in another way. All cases which allow a recovery by contract implied in law do so for reasons of equity, to prevent the defendant from unjustly retaining what should go to the plaintiff. It would be quite paradoxical to declare illegal a contract because the corporation should in justice retain its capital for its creditors and not distribute it among shareholders, when in the next breath one directed the corporation to pay over the same capital to shareholders because it was unjust for the corporation longer to retain it. No authority based upon a transaction between a corporation and third parties has any application, when the real question turns upon the priority of creditors to shareholders, as here.

Petition denied; order affirmed.