TOPKEN, LORING & SCHWARTZ, INC., Respondent, *v.* JULIUS L. SCHWARTZ, Appellant.

(Argued October 1, 1928; decided November 20, 1928.)

*Jonas J. Shapiro* and *Alexander Lindey* for appellant. The agreement to resell the stock to the plaintiff is wholly without consideration. (*Commercial Wood & Cement Co.* v. *Northampton P. C. Co.*, 115 App. Div. 388; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392.)

*Albert A. Friedlander* for respondent. The adequacy of the consideration was a matter purely of agreement between the plaintiff and the defendant with which the court should not interfere. (*Godine* v. *Kidd*, 64 Hun, 585; *Parsons* v. *Teller*, 111 App. Div. 637; *Worth* v. *Case*, 42 N. Y. 362; *Cowee* v. *Cornell*, 75 N. Y. 91; *Earl* v. *Peck*, 64 N. Y. 596.)

CRANE, J. The plaintiff has brought action on a contract for the repurchase of stock. It is a sales contract, not a contract of employment, although there be an intimation that the defendant had been an employee

of the plaintiff. Without repeating all the allegations of the formal instrument made the first day of June, 1922, between the Loring Glove Co., Inc., a domestic corporation, and Julius L. Schwartz of the city of New York, it will meet our purposes to state that the Loring Glove Co. sells and transfers to said Schwartz 114 shares of its capital stock for $11,400, with the privilege of purchasing more under certain conditions. The purchase is made subject to the terms and conditions of another agreement dated June 30, 1921, but as no copy of this agreement is contained or referred to in the record, we must disregard this statement or recital. Paragraph 4 of the agreement sued upon reads as follows: " The party of the first part does hereby agree to purchase from the party of the second part, and the party of the second part does hereby agree to sell to the party of the first part, any and all shares of the capital stock of the party of the first part which may be held by the party of the second part at the end of the period of employment of the party of the second part by the party of the first part under agreement dated the 1st day of June, 1922, or any other due and proper termination thereof, at the actual book value of the said shares at the time of purchase and sale under the terms of this paragraph, exclusive of any good will."

The complaint sets forth the agreement as an exhibit and states that the Loring Glove Co. has changed its name to Topken, Loring & Schwartz, Inc. Also it is alleged that the employment of the defendant terminated June 1, 1927, and that he has refused to transfer and resell the 152 shares of capital stock held by him to the plaintiff. No money is offered in the pleading to the defendant for this stock which is said to have no actual book value and no market value. The plaintiff, desiring the stock because it is a close corporation having only four stockholders, its business being wholly of a private nature, has asked that equity decree it to be the owner

of the 152 shares and compel the defendant to transfer them accordingly.

Does this complaint state a good cause of action? Is the agreement alleged matter for specific performance?

Section 664 of the Penal Law enacts:

"A director of a stock corporation, who concurs in any vote or act of the directors of such corporation, or any of them, by which it is intended: * * *

" (5) To apply any portion of the funds of such corporation, except surplus, directly or indirectly, to the purchase of shares of its own stock, is guilty of a misdemeanor."

No corporation, therefore, can buy its own shares of stock out of its capital without making the officers voting such purchase violators of this law.

This provision of the Penal Law of course has application only to the State of New York, but it has generally been held that no corporation can purchase its stock with its capital to the injury of its creditors. The capital of a corporation is held in trust for its creditors, so that any agreement to purchase stock from a stockholder, which may result in the impairment of capital, will not be enforced, or will be considered illegal if the rights of creditors are affected. (*McIntyre* v. *Bement's Sons*, 146 Mich. 74; *Hoover Steel Ball Co.* v. *Schaefer Ball Bearing Co.*, 90 N. J. Eq. 164; *Fremont Carriage Mfg. Co.* v. *Thomsen*, 65 Neb. 370; *West Penn Chemical & Mfg. Co.* v. *Prentice*, 236 Fed. Rep. 891; *Tierney* v. *Butler*, 144 Ia. 553; Cook on Corporations, vol. II, sec. 311, p. 1040; *Boley* v. *Sonora Development Co.*, 126 Mo. App. 116.) " The stock of a corporation is its only basis of credit, and it is of vital importance that it be rigidly guarded and protected. Courts have conceived it to be their duty to detect and defeat any scheme or device calculated in any way to place this fund beyond the reach of the creditors." (*Matter of Fechheimer Fishel Co.*,

212 Fed. Rep. 357, 365; *Grasselli Chemical Co.* v. *Ætna Explosives Co., Inc.,* 258 Fed. Rep. 66; White on Corporations, pp. 712, 713; *Strodl* v. *Farish-Stafford Co.,* 145 App. Div. 406.)

This contract, therefore, in question would have been impossible of performance under certain conditions. The defendant Schwartz it is said was bound to sell and convey his stock at book value at the end of his employment. How about the corporation? What were its obligations? If it had no surplus, it could not legally perform the purported contract; it could not make the purchase. Under our statute it would have been illegal; without our statute it would have been unenforceable as against the corporation, if there were creditors and no surplus. (*Hoover Steel Ball Co.* v. *Schaefer Ball Bearing Co., supra.*) Whichever way we look at it there were certain conditions under which the corporation would be unable to perform its promise to purchase the stock and under which the courts would declare its contract so to do illegal. If, therefore, we consider the contract in question, as we must, one dependent upon mutual promises for the consideration, we have the defendant promising that at a certain time he will sell at a certain price and the plaintiff promising to buy. The promise is binding upon the defendant but may or may not be binding upon the plaintiff. It is as if the plaintiff had a choice to buy or not as it pleased. By "binding" I mean that the corporation could execute the contract by purchasing the stock out of its surplus, but could not, without violating the law, purchase its stock when it had no surplus. Under these circumstances, we have a contract not mutually binding, and, therefore, lacking in consideration. (*Schlegel Mfg. Co.* v. *Cooper's Glue Factory,* 231 N. Y. 459, 462.) "The principle is ordinarily stated in the axiom that in a bilateral agreement both promises must be binding or neither is binding." (Williston on Contracts, sec. 103-e.)

*Richards* v. *Wiener Co.* (207 N. Y. 59) contains some

statements in the opinion which would be very apt to lead one to take the other view and to hold that this contract was good unless it appeared that the corporation were insolvent. The statements to this effect in the opinion are not necessary for the decision of the case as the court considered the contract an option to purchase and a contract of employment. (See *Matter of Tichenor-Grand Co.*, 203 Fed. Rep. 720.) If in the case before us the defendant had been given employment and the employment had furnished the price or the consideration for his agreement to return the stock at the end of his employment, we would then have a contract resting not on a mutuality of promises, but upon a consideration given and paid in part by the corporation. (*Hoover Steel Ball Co.* v. *Schaefer Ball Bearing Co.*, *supra* [last paragraph, p. 171]; vol. 1, Williston on Contracts, sec. 13; *Strait* v. *Northwestern Steel & Iron Works*, 148 Wis. 254.) The contract then would be good unless it appeared that the stock would be purchased out of capital. This would be a matter of defense. The situation here, however, is as above stated; the contract for its consideration rests upon mutual promises. One of the promises may or may not be good, the same as if a discretion were left to one of the parties to perform or not perform. Under such circumstances there is no consideration and the contract cannot be enforced. Specific performance under such circumstances will not be decreed.

For these reasons the order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division. The first question certified should be answered " No," the second question certified not answered.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.