ABRAHAM NORWALK and Another, Individually and as Copartners Doing Business under the Firm Name and Style of NORWALK BROS., Appellants, *v.* BERNARD K. MARCUS and Another, Defendants, Impleaded with BANK OF UNITED STATES, Respondent.

First Department, April 29, 1932.

*Irving D. Lipkowitz* of counsel [*George W. Israel* with him on the brief; *Irving D. Lipkowitz*, attorney], for the appellants.

*Charles F. Preusse* of counsel [*Arthur Ofner* and *Warren C. Fielding* with him on the brief; *Carl J. Austrian*, attorney], for the respondent.

MARTIN, J. The complaint alleges that the defendants, including the Bank of United States, agreed that if the plaintiffs would purchase certain units of stock, each consisting of one share of the Bankus Corporation and one share of the Bank of United States stock at the price of $198 per unit, the defendants Bernard K. Marcus, the Bank of United States and the Bankus Corporation would, at any time within one year after the date of such purchase, repurchase the said units at the aforementioned price of $198 per unit. In reliance upon such promises plaintiffs, some time in July, 1929, did purchase sixty units of said stock at the price of $198 per unit, and within one year of the date of the purchase " the plaintiffs duly tendered and offered to resell to the said Bernard K. Marcus, Bank of United States and Bankus Corporation the aforesaid 60 units of stock and demanded therefor the sum of $198 per unit," but the defendants have refused to repurchase the same and as a result the plaintiffs allege they have been damaged in the sum of $11,880.

The appellants claim that the respondent's agreement to repurchase was merely a provision for the rescission of the entire contract, pursuant to which the plaintiffs purchased the stock and it is, therefore, not illegal; that the respondent's violation of the Banking Law, if it has been violated, does not constitute a defense to this action; that the agreement was *ultra vires* and not illegal, and, therefore, the plaintiffs having performed on their part, the respondent is estopped from asserting its own lack of authority. It is also contended that there was a failure of consideration and, therefore, the appellants are entitled to recover; that the rights of the appellants were fixed prior to July, 1930, the date of the alleged insolvency of the respondent, and, therefore, the insolvency subsequent to the commencement of this action is immaterial.

The respondent says that the alleged contract of the bank to repurchase shares of its own stock is unenforcible. It is claimed that the repurchase by a bank of shares of its own capital stock is inherently vicious and, if permitted, would deprive the creditors of the bank of the statutory security furnished by the assessment liability of stockholders upon the insolvency of the bank and would result, in effect, in an unauthorized reduction of its " capital stock or permanent capital " which is carefully guarded from impairment by express provisions of the Banking Law. It is further contended that it would operate, in many instances, to impair the legal reserves of the bank and would weaken and impair or, perhaps, destroy the security of the depositors and creditors through what may be

described as an investment in its own securities, which automatically become worthless upon the failure or insolvency of the bank. It is also argued that it would enable the board of directors and officers to repurchase and practically retire, with the bank's own funds, sufficient of its capital stock to perpetuate their tenure and control and thus lead directly to minority management without check or restraint by a financially interested and diversified body of stockholders and directors.

In dealing with stock corporations generally, the Legislature has found it necessary, in the interest of the public, to declare invalid agreements by corporations to repurchase shares of their own stock except out of surplus. (*Topken, Loring & Schwartz, Inc.*, v. *Schwartz*, 249 N. Y. 206; *Cross* v. *Beguelin*, 252 id. 262.)

Recognition of a broader public interest in the financial soundness and stability of banking institutions is reflected in a sterner legislative policy which prohibits a bank from using its assets, including surplus, in the purchase of its own stock, unless necessary to prevent a loss upon a debt previously contracted in good faith.

Section 108, subdivision 6, of the Banking Law provides in part:

" § 108. * * * A bank subject to the provisions of this article * * *

" 6. Shall not make any loan or discount on the security of the shares of its own capital stock, or be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, * * *."

The absolute character of the prohibition is emphasized by the succeeding language of the same subdivision which provides: " * * * and stock so purchased or acquired shall be sold at public or private sale, or otherwise disposed of, within six months from the time of its purchase or acquisition. * * *."

Adequate supervision and publicity of operations of banking institutions have long been the aim and the public policy of this State. The statute in question represents an effort in that direction. To uphold the transaction upon which this litigation is founded would largely reverse this policy and seriously augment the risks and dangers to the public inherent in the business of banking.

The entire contract is not illegal. That part providing for the sale of stock to the plaintiffs is valid and may be enforced. This proposition appears to have been passed upon in *Hoover Steel Ball Co.* v. *Schaefer Ball Bearings Co.* (90 N. J. Eq. 164); *Atwater* v. *Stromberg* (75 Minn. 277); *Knight* v. *Jeff Davis Banking Co.* (31 Ga. App. 440; 120 S. E. 696); *Jackman* v. *Continental National Bank* (16 F. [2d] 728).

The most direct holding on the subject will be found in *Hoover Steel Ball Co.* v. *Schaefer Ball Bearings Co.* (*supra*). That case involved the sale of stock by a New York corporation under which the corporation agreed to repurchase the stock within one year at the option of the purchaser. A demand to repurchase and a refusal by the corporation were alleged. Upon the insolvency of the corporation and the appointment of a receiver, a claim was filed on the agreement to repurchase and the refusal of the receiver to pay the claim was sustained on the authority of New York and New Jersey cases.

At page 169 the court said: " ' We think this contract is of the class where the valid provisions may stand unaffected by the invalidity of another provision, and where the law leaves the parties *pro tanto* where it finds them.' "

At page 168 of the same opinion the court said: " The claim on the part of the appellant that if such contract is unenforcible as against the corporation, the consideration has failed, and that the purchaser is entitled to be repaid the amount paid for the stock because it is unfair that the corporation should retain it, is answered by the Supreme Court of Michigan in *McIntyre* v. *E. Bement's Sons*, [146 Mich. 74] 109 N. W. Rep. 45, 47, in the following language: ' But the promise of such a corporation to buy its own stock, if under any circumstances valid, must be considered as made and accepted with the understanding that the shareholder may not, in the face of insolvency of the company, change his relation from that of shareholder to that of creditor, escaping the responsibilities of the one and receiving the benefits of the other; ' and by the Circuit Court of Appeals for the Sixth Circuit, in *Allen* v. *Commercial National Bank of Detroit*, [191 Fed. 97] in the following language: ' To hold that the contract with the corporation to repay is invalid, but that Allen may demand repayment because of the failure of the expected consideration, is to accomplish by indirection the forbidden result.' "

The Court of Appeals in the case of *Richards* v. *Wiener Co.* (207 N. Y. 59) approved the language of Mr. Justice SCOTT of this court in the same case (145 App. Div. 353), who, in holding such a contract enforcible, said: " The law will not presume, unless forced to do so, that a person intends to do an illegal act. It will not, therefore, presume that the parties intended to make an illegal contract. The contract itself, therefore, was perfectly legal, subject to certain limitations upon its enforcibility. If, when the time came, defendant had a sufficient surplus the contract could be enforced. If it had not, the contract could not be enforced."

While the above case refers to contracts made with corporations

other than banking institutions, nevertheless it is authority for the proposition that the part of such a contract which is legal may be enforced.

In the case of *Cross* v. *Beguelin* (*supra*) a corporation and a stockholder had entered into an agreement under which the corporation was to purchase the stock for a fixed price, the corporation became financially embarrassed and, instead of a surplus, showed a deficit, and the court held that the agreement was, therefore, unenforcible as against the corporation.

At page 265 the court said: "When made, the agreement with Ferdinand Cross was valid. Then a surplus existed. After the corporation became financially embarrassed and the surplus shrank to a deficit, the agreement became unenforceable as against the corporation. [Penal Law, § 664; *Richards* v. *Wiener Co.*, 207 N. Y. 59, 65; *Topken, Loring & Schwartz, Inc.*, v. *Schwartz*, 249 N. Y. 206; *Matter of Fechheimer Fishel Co.*, 212 Fed. Rep. 357.] The assets constitute a trust fund for creditors. (*Trotter* v. *Lisman*, 209 N. Y. 174; *First Trust Co.* v. *Ill. Cent. R. R. Co.*, 256 Fed. Rep. 830.) If plaintiff had pressed his claim against the corporation, it would have been bound to resist it."

Apart from the policy of the State of New York which forbids the repurchase of stock of corporations, except out of their surplus, we have the additional safeguard relating to banking corporations. The statutes relating to that subject are emphatic in prohibiting transactions which will in anywise impair the security which is sought to be given depositors and creditors.

If contracts of the character here sought to be enforced were to be held valid, it would be difficult to ascertain who were the stockholders at any given time. If the contracts under which they held their stock were enforcible or unenforcible at the option of the purchasers of the stock, a condition might arise which would destroy the protection given by statute to creditors of a banking institution.

We are of the opinion, therefore, that the portion of the contract here under consideration which provides for the sale of stock is a valid contract, but that the portion which provides for the repurchase by the bank is unenforcible.

The judgment and order should be affirmed, with costs.

FINCH, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment and order affirmed, with costs.