DENNIS REALTY CORP., Landlord, *v.* ABRAHAM TWERSKY et al., Tenants.

Municipal Court of the City of New York, Borough of Bronx, February 5, 1947.

*Arthur C. Parker* for landlord.

*Matthew M. Levy, Louis Kantor* and *Abraham Karp* for tenants.

FRANK, J. This is a proceeding by Dennis Realty Corp., landlord, to dispossess Abraham Twersky, tenant, for nonpayment of rent for the months of July, August, September and October, 1946. The monthly rental of the apartment occupied by this tenant, originally fixed at $62 was reduced, effective April 1, 1944, by the Office of Price Administration to $59.25 per month. The reduction of $2.75 per month was the value fixed by the Administrator for elimination of bus service previously furnished by the then landlord. The total rent, therefore, sought to be recovered from the tenant herein for the four-month period is $237.

In addition to this proceeding there are pending approximately 210 other summary proceedings and a number of actions for rent, all of which by order of this court, made upon stipulation of counsel, were jointly tried pursuant to section 96-a of the Civil Practice Act.

The premises affected comprise four walk-up apartment houses, known as 3451 Giles Place, 3605 Sedgwick Avenue, 3470 Cannon Place and 68 West 238th Street, in the borough of The Bronx. The buildings are five stories in height and contain 235 apartments, an auditorium, a cafeteria and a number of rooms used as schoolrooms and meeting rooms. There are several privately operated schools using these facilities attended by children resident not alone in.these buildings but in others not owned by the landlord herein. An unincorporated association known as the Sholom Aleichem Cooperative Association assumed control of the auditorium, cafeteria, school and meeting rooms without payment of rent.

The entire development was originally co-operatively owned. Many years ago this co-operative ownership was extinguished by foreclosure proceedings. Nevertheless, some of the apartments are still occupied by tenants who were former owners.

By the afore-mentioned stipulation (landlord's Exhibit 20 in evidence), all parties agree that the landlord has established its case in each instance, and is entitled to recover the amount sought in the petition, except for the allowance by the court, if any, of the counterclaims. The allegations in the individual answers of the tenants are withdrawn except for the defenses and counterclaims for damages predicated upon the alleged breach of contract by the landlord to supply bus service, and to allow each tenant a rebate of one quarter of the rent for the month of October, 1946, as a concession.

In the case of the tenant, Twersky, the damages sought for the alleged breach of contract to supply bus service is $124.80. The tenant computes his damages at ten cents per day each, for himself, his wife, his mother and his father-in-law, a daily total of forty cents for a period of 312 days. On the trial, the tenant reduced this to $93.60, by eliminating the claim for his mother.

The use of buses, operating along Sedgwick Avenue and owned by the Surface Transportation Company, a common carrier, by the residents of these buildings in traveling to and from the subway station, forms the basis of these claims. The same formula is employed by all the tenants in their respective claims for damages, to wit: ten cents per day per person using such transportation in each family, regardless of the size or rental value of the apartment occupied.

The bus service furnished the tenants of these buildings, and many others throughout The Bronx, was discontinued by the issuance of governmental directives during the war. There-

after, the Office of Price Administration initiated proceedings to reduce the rents of these apartments and thousands of others in this county, because of the elimination of this service. The rents were reduced upon a formula set up by the Office of Price Administration based upon the rental value of each of the thousands of apartments with and without bus service.

The formula for these buildings (landlord's Exhibit 3 in evidence) resulted in reductions ranging from $1.25 per month for a $30 apartment to $2.75 per month for the apartment of the tenant Twersky. The order reducing the maximum rent was issued as of February 24, 1944, effective April 1, 1944.

The testimony of the Office of Price Administration representative, undisputed, was that any tenant dissatisfied with such reduction could make application for a rehearing and seek a further reduction. No such action was taken by any tenant in these premises.

The present landlord acquired the premises by deed dated September 14, 1945. The conveyance was from Herman Koch and Emanuel Stein, doing business as Mastock Company, to Dennis Realty Corp. The contract to purchase (tenant's Exhibit A in evidence) dated August 21, 1945, was made between Mastock Company and Marvin Greenberg. Marvin Greenberg, who assigned this contract to Dennis Realty Corp., is the president of this corporation, the landlord in these proceedings.

The contract to purchase contains the following clause: " The seller agrees to procure, at the closing of title, an extension of the renewal agreement dated December 19, 1944, for the period from October 1st, 1945 to September 30, 1946."

During the period intervening between the contract to purchase and the delivery of the deed an agreement (tenant's Exhibit B in evidence, dated Sept. 1, 1945) in the form of a communication addressed to " Sholom Aleichem Cooperative Association " was signed by Koch and Stein, doing business as Mastock Company. At the end of this document there is typed, " Accepted: Sholom Aleichem Cooperative Association by Abraham Karp, President." Although in this form, it was prepared by Karp, who is an attorney.

This exhibit forms the core of the controversy between the parties. The basic question to be determined is whether this ever was a valid agreement and whether it is binding upon Dennis Realty Corp. It is not disputed that it was made between a prior landlord who was out of possession of the property when the agreement was to become effective, and an unincorporated association not itself a tenant in the premises.

One of the significant portions (paragraph 10) reads, "Neither the association nor its representatives who sign this agreement, nor any member of the association, agree or undertake to pay the rental of any person whatsoever or agree to perform or undertake any obligations whatsoever, except that each tenant agrees or undertakes to pay the rent provided for in the lease individually signed by him."

The association thus specifically absolves itself from any legal obligation. There was no consideration for the agreement flowing from the tenants. Their leases with the predecessor landlord expired on September 30, 1945, prior to the effective date of the agreement. The evidence satisfies me that no leases or other legal agreement affecting the tenancies were in force after this date. The tenancies, therefore, were statutory as distinguished from holdover (*People ex rel. Durham Realty Corp.* v. *LaFetra,* 230 N. Y. 429; *440 West End Ave. Inc.,* v. *Dempster,* 200 App. Div. 101; *Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *Cannon* v. *Gordon,* 181 Misc. 950; *Hausman* v. *Rowland,* 183 Misc. 654). The obligation to pay the rent as fixed by the Office of Price Administration already existed. Neither the landlord nor the tenants could agree to any higher rental without an order of the Office of Price Administration and concededly no such order was ever made.

The decisions uniformly hold that no valid consideration is imparted by a promise to perform an act already legally required. The Appellate Division, in the case of *Melnick* v. *Kukla* (228 App. Div. 321, 324), said: "A promise to do that which the promisor is already legally bound to do, or the performance of an existing legal obligation, does not constitute a valid consideration for an agreement."

Judge LEHMAN, writing for the Court of Appeals, in the case of *Schram* v. *Cotton* (281 N. Y. 499, 507) said: "A voluntary promise to assume a duty or liability, which the law imposes even where there is no promise, creates no new duty or liability."

In the case of *Morrison Estates* v. *H. & M. Amusement Co.* (17 N. Y. S. 2d 565), the Appellate Term of this department held that, "Payment of a sum admittedly due does not of itself constitute consideration for any agreement."

The propositions are basic that a contract to be enforcible must be supported by a valid consideration or there must exist at the time of its inception mutuality of obligation.

Clark on New York Law of Contracts states it thus (Vol. 1, § 316, p. 474): "A promise by one party to perform an act

or series of acts in consideration solely of the performance of another act or series of acts by the other party, the latter being left entirely free to perform or not on his part, is unenforceable for want of a sufficient consideration, and mutuality of obligation must exist at the same time. If there is no mutuality of obligation it is immaterial that the contract is signed by both the parties and duplicate copies taken by each.''

The law in this State is succinctly enunciated in the unanimous opinion of the Court of Appeals in the case of *Topken, Loring & Schwartz, Inc.,* v. *Schwartz* (249 N. Y. 206, 211): '' * * * the contract for its consideration rests upon mutual promises. One of the promises may or may not be good, the same as if discretion were left to one of the parties to perform or not perform. Under such circumstances there is no consideration and the contract cannot be enforced.'' (To like effect are: *Sidrane* v. *F. D. R. Realty Corporation,* 61 N. Y. S. 2d 828; *Schlegel Mfg. Co.* v. *Cooper's Glue Factory,* 231 N. Y. 459; *Lincoln Service* v. *Rivera,* 187 Misc. 607.)

The Appellate Division of this department in *Transatlantic Rapid System, Inc.,* v. *Decoulos* (270 App. Div. 987) said: '' The alleged contract contains no express consideration, nor are there any mutual promises of the parties from which such consideration can be fairly deduced; it is therefore unenforcible. Unless both parties to a contract are bound so that either has a cause of action for breach thereof, neither is bound.''

In the case of *Schlegel Mfg. Co.* v. *Cooper's Glue Factory* (231 N. Y. 459, *supra*), the contract in question, as here, was in the form of a letter from defendant and marked '' accepted '' by plaintiff. The defendant agreed to sell certain merchandise to plaintiff upon whom there was no corresponding duty to buy.

The court in holding the contract a nullity (p. 461), said, '' The plaintiff, it will be observed, did not agree to do or refrain from doing anything. * * * Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound.''

In the case at bar, the alleged contract not alone sets forth no consideration, but of even greater significance it specifically appears in paragraph 10 that, '' Neither the association, nor its representatives who sign this agreement, nor any member of the association * * * agree to perform or undertake any obligation whatsoever * * *.''

As was said in *Godfrey* v. *Newman* (135 Misc. 764): '' A contractual duty will not be implied when the absence of it is clearly expressed.''

The latest expression of our courts on this subject seems to be the case of *Lincoln Service* v. *Rivera* (187 Misc. 607, *supra*). A written agreement was made wherein plaintiff was authorized to install a vending machine in defendant's establishment for a period of five years. Defendant was to receive nothing from the sales of cigarettes vended during the shortage, and thereafter one cent per pack. The plaintiff was to be permitted to remove the machine at will. In the event that defendant required the removal of the machine, the agreement provided that plaintiff would be entitled to recover $1.50 per week for the remaining period, as liquidated damages. After nine months, the defendant requested the removal of the machine. The action for liquidated damages followed. From a judgment for plaintiff, defendant appealed. The plaintiff argued that even if contract lacked mutuality, there was consideration in that plaintiff supplied cigarettes when there was an acute shortage.

The Appellate Term, Second Department, in reversing the judgment, said: "The agreement sued upon is unenforcible because it lacks mutuality of obligation."

Tenant's Exhibit B is therefore held to be *nudum pactum*.

Unnecessary, therefore, to further consideration in these proceedings is the measure of damages. Whether it is, as contended by the tenants, on the basis of ten cents per day per person, or whether the limit is $84 per month, the difference between the amount specified in Exhibit B and the monthly allowance of $416 made by the Office of Price Administration is immaterial.

I find, however, from the evidence, that the tenant Twersky received a reduction of his monthly rental by order of the Office of Price Administration of $2.75 for the discontinuance of bus service, and that the total reduction for all tenants was $416 per month. I find further from the credible evidence on the trial that the landlord paid $84 per month and the conclusion is inescapable that the checks were delivered and received in full payment and discharge of the liability of the landlord, if any, under Exhibit B. Paragraph 11 of the agreement absolved the landlord from liability for nonperformance " * * * due to legislative, judicial or public administration acts, orders or regulations now or hereafter enacted or made, or for any other cause not within our control * * *."

The evidence satisfies me that the landlord made every reasonable effort to supply bus services, but could not obtain the necessary equipment, nor was it able to obtain such service from any company rendering such service.

Although in this trial, no proof was offered that by order of a court of competent jurisdiction the furnishing of such service by a bus company was illegal, thereafter the Appellate Division of this Department in the case of *Surface Transportation Corporation* v. *Reservoir Bus Lines* (271 App. Div. 556) reversed a Special Term decision denying an injunction restraining the operation of these apartment house buses in competition with the regularly franchised common carriers.

I find, therefore, that both in law and in fact the landlord has been excused from performance under paragraph 11 of Exhibit B, even if the agreement were otherwise binding upon the Dennis Realty Corp.

It has been urged by the landlord that Exhibit B is a nullity, because the association is not a legal entity and could not enter into any contract binding upon the individual tenants. In view of my holding, it is unnecessary for me to determine this question.

There remains only the question of rent concessions. Each tenant counterclaims for such concession in an amount equivalent to one quarter of the rental for the month of October, 1946. The tenant Twersky's counterclaim is for $14.80. I find that in fact and law the tenants being statutory tenants are not entitled to recover for such concessions as a contractual right. The landlord is under no contractual obligation to make such allowance.

If there be such obligation upon the Dennis Realty Corp., it must, therefore, flow from the imposition of a statutory directive and could emanate only from the regulations promulgated by the Office of Price Administration. The undisputed testimony establishes that the rent division of that agency has a method of determining the question of concessions, and under the regulation (§ 5, subd. [c], par. [8]; 8 Federal Register 13917) enforces its findings when in favor of the tenant by an appropriate reduction in the maximum rent. The tenants can avail themselves of this right. The Appellate Term of this department has heretofore ruled on this precise problem (*Barnes Development* v. *Abramowitz,* App. Term, 1st Dept., No. 42, Dec., 1944). I conclude that the tenants are not entitled to any allowance for concessions in this forum.

The counterclaims of the tenants, therefore, are dismissed on the merits, and final orders and judgments are awarded the landlord herein, on the merits, as against Twersky in the sum of $237, and as against the other tenants in the amounts speci-

fied in the stipulation (landlord's Exhibit 20 in evidence) under the heading " Amount conceded due in suits."

Final orders and judgments against all tenants, other than Twersky will be entered in accordance with the aforesaid stipulation.

Issuance of warrant stayed for five days after the entry of final orders and judgments.