NASSAU SUPPLY Co., INC., Respondent, *v.* ICE SERVICE Co., INC., Appellant.

First Department, May 24, 1929.

*Herman J. Witte* of counsel [*Walter Jeffreys Carlin*, attorney], for the appellant.

*Sydney M. Heimann* of counsel [*I. Gainsburg* with him on the brief; *Rao & Paider*, attorneys], for the respondent.

MARTIN, J. This action was brought to recover the sum of $43,650 because of the failure of defendant to make deliveries of ice under the terms of an alleged contract said to have been entered into between the parties on the 21st day of March, 1924.

The defendant was engaged in the business of manufacturing and selling ice, both at retail and wholesale, in the boroughs of Manhattan, Queens and Kings. By the terms of the alleged agreement the defendant was obliged to sell to the plaintiff between May 1, 1924, and April 30, 1925, all the ice used by the plaintiff up to 100 tons a day at two dollars and fifty cents per ton. The paper signed by the parties provides as follows:

" Agreement made this day between Ice Service Co., Inc., and the Nassau Supply Co., Inc., 20 West Seaman Avenue, Freeport, Long Island.

" Witnesseth — that for and in consideration of the mutual agreements herein contained the Ice Service Co., Inc., hereby agrees to sell (strikes and delays from causes beyond our control excepted) to the Nassau Supply Co., Inc., of #20 West Seaman Ave., Freeport, Long Island (100) One Hundred tons of ice each day at the Forest Park Plant, 76th St. and Jamaica Ave., Woodhaven, Long Island, at $2.50 per ton, and the said Nassau Supply Co., Inc., hereby agrees to purchase from the said Ice Service Co., Inc.,

all the ice used by them up to (100) One Hundred tons.   Payments for same daily.

" From May 1st, 1924, to April 30, 1925."

After the complaint was served, a bill of particulars was demanded.   The plaintiff attempted to escape the effect of this agreement by setting forth in the bill of particulars that the agreement was oral.   On the trial the evidence conclusively established that a copy of the agreement was annexed to the complaint upon which this action was based.

By this alleged agreement although it was provided that the defendant was to sell to the plaintiff all the ice used by it up to 100 tons a day, there was no obligation whatever on the part of the plaintiff to purchase any ice.   The plaintiff could refuse to purchase ice, and the defendant could not recover damages.   The plaintiff could take one ton of ice or no ice whatever as it saw fit.

At the time the alleged agreement was made the plaintiff was not engaged in the ice business and had no requirements for ice. It had hoped to secure contracts but had no contracts at that time or when the deliveries were expected to commence.

The plaintiff first attempted to show that its demands for ice were large, but it finally developed under cross-examination that its activities were confined exclusively to the coal business and that no ice was required or demanded.

The principal witness for the plaintiff testified as follows: " Q. So that at the time you made this contract you had no business either retail or wholesale?   A. Not outside of the Hillcrest Ice Company.   We took that over from the original starting of the Hillcrest Ice Company.   Q. You did not buy it until June? A. No.   The Court: What I want to know is this: On March 31st, 1924, was this concern of yours buying and selling ice anywhere?   The Witness: No, sir."

The reason for the form of the alleged contract may be inferred from the fact that the plaintiff was not in the ice business and was unwilling to obligate itself to purchase any ice fearing it might be liable for damages.

In an effort by the plaintiff to avoid all liability it has produced an unenforcible contract; a contract void for lack of mutuality.

In the case of *Schlegel Mfg. Co.* v. *Cooper's Glue Factory* (231 N. Y. 459) the court said: " * * * The plaintiff, it will be observed, did not agree to do or refrain from doing anything.   It was not obligated to sell a pound of defendant's glue or to make any effort in that direction.   It did not agree not to sell other glue in competition with defendant's.   The only obligation assumed

by it was to pay nine cents a pound for such glue as it might order. Whether it should order any at all rested entirely with it. If it did not order any glue, then nothing was to be paid. The agreement was not under seal, and, therefore, fell within the rule that a promise not under seal made by one party, with none by the other, is void. Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound. (*Grossman* v. *Schenker*, 206 N. Y. 466; *Levin* v. *Dietz*, 194 N. Y. 376; *Chicago & Gt. E. Ry. Co.* v. *Dane*, 43 N. Y. 240; *Hurd* v. *Gill*, 45 N. Y. 341; *Commercial Wood & Cement Co.* v. *Northampton Portland Cement Co.*, 115 App. Div. 388; *Jackson* v. *Alpha Portland Cement Co.*, 122 App. Div. 345; *Crane* v. *Crane & Co.*, 105 Fed. Rep. 869; Williston on Contracts, sec. 104.) Had the plaintiff neglected or refused to order any glue during the year 1916, defendant could not have maintained an action to recover damages against it, because there would have been no breach of the contract. In order to recover damages, a breach had to be shown, and this could not have been established by a mere failure on the part of the plaintiff to order glue, since it had not promised to give such orders."

In the United States Circuit Court in the case of *Imperial Refining Co.* v. *Kanotex Refining Co.* (29 F. [2d] 193) the court stated the rule as follows: " * * * When the quantity of a commodity to be delivered or received under a contract of sale rests in the uncontrolled will or desire of one of the parties, mutuality is lacking. It is otherwise when the quantity is measured by the output or requirements of an established plant or business during a limited time. *Cold Blast Transp. Co.* v. *Kansas City Bolt & Nut Co.*, 52 C. C. A. 25, 114 F. 77, 57 L. R. A. 696. This latter rule is an adjustment of legal principles to necessary and reasonable business usages."

Apart from the fact that the contract is unenforcible because of want of mutuality the evidence clearly established that the plaintiff not only had no intention of carrying out its terms but was never in a position to do so.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

FINCH, MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.