## KELBLE OPERATING CORPORATION v. JARKA CORPORATION.

District Court, S. D. New York.
Sept. 13, 1937.

Thomas A. McDonald, of New York City (Thomas A. McDonald, of New York City, and Joseph V. Costa, of Brooklyn, of counsel), for plaintiff.

Clark, Carr & Ellis, of New York City (Paul A. Crouch, of New York City, of counsel), for defendant.

ABRUZZO, District Judge.

The plaintiff alleges that the defendant, stevedores, in 1934 had a contract for the discharge and loading of sugar at Norfolk, Va., with Farr & Co. On

648

June 22, 1934, the plaintiff claims to have made an agreement with the defendant whereby the plaintiff was to receive a commission of 5 cents a gross ton on sugar discharged under the contract which the defendant had with Farr & Co. The plaintiff, in lieu of this payment of 5 cents a ton, agreed to refrain from soliciting the stevedoring business of Farr & Co., representing that it, the plaintiff, had been designated as the exclusive agent of Farr & Co. and as such agent was authorized by this company to take care of its stevedoring work whereby the plaintiff could receive a commission.

The plaintiff contends that there was a verbal agreement and not a written one. (Page 5 of plaintiff's reply memorandum.) A letter was offered in evidence which reads as follows:

"June 22, 1934
"The Kelble Operating Corporation,
"95 Broad Street,
"New York, N. Y.
"Gentlemen:

"In view of the fact that arrangements for handling Farr & Co. business will in the future be made thru The Kelble Operating Corporation, it is understood and agreed that a commission of five cents per gross ton will be paid to the Kelble Operating Corporation by The Jarka Corporation on any Cuban Raw Sugar which is discharging from steamers and stored in warehouses at Norfolk under our existing contract.

"There will not be a separate commission on ship and dock work, it being understood that the commission of five cents per gross ton will be the only commission paid to The Kelble Operating Corporation on the inward movement of sugar. It is also understood that a commission of five cents per gross ton will be paid on sugar moving out of warehouse and loaded into steamers. This commission is based on the present stevedoring rate specified in our existing contract with Farr & Co.

"In the event the rate for loading from and discharging to the end of ship's tackle is increased, a further additional commission will be paid to The Kelble Operating Corporation the amount of additional commission to be mutually satisfactory to your company and ourselves.

"If the cargo stored under the present contract is transferred from warehouse and is loaded on lighters or barges (in which case the remuneration to us will probably be less than if loaded to steamers), a fair rate of commission mutually satisfactory to The Kelble Operating Corporation and The Jarka Corporation will be agreed upon.

"In the event a new contract is made by Farr & Co. with The Jarka Corporation for additional future business, the commission to be paid to The Kelble Operating Corporation on this new business will be mutually agreed upon.

"The arrangement concerning commission, which has been described in the foregoing paragraphs, will commence with the first ship to be worked after the S. S. "Gunny", which vessel is now discharging at Norfolk.

"We trust that this arrangement is satisfactory to the Kelble Operating Corporation, as well as to Farr & Co., and we assure both of these companies that any future business will receive our very best attention.

"Very truly yours,
"The Jarka Corporation,
"By L. H. Ackerman."

The plaintiff concedes that the letter was offered in evidence, not as the contract, but as evidence of the verbal agreement previously made. (Page 5 of plaintiff's reply memorandum.)

The question of damages was held in abeyance until a determination by the court as to whether or not there was a valid subsisting contract. The plaintiff seeks substantial damages. Both parties moved for a direction of a verdict at the end of the entire case.

The plaintiff has not sustained its right to damages, as it has not proved a valid subsisting contract existed between the parties. There seems to be no mutuality contained in this agreement. The defendant was to make certain payments as long as its contract with Farr & Co. existed, this being a definite, certain obligation to which the defendant on its part agreed to, but which could be terminated by the plaintiff at any time it resumed the solicitation of the Farr & Co.'s business at Norfolk, Va. Thus, the plaintiff urges that the contract obligated the defendant in a certain amount and for a certain period of time, but that, on the other hand, the plaintiff could avoid its obligation not to solicit the Farr & Co. business at any time it saw fit to do so. (Page 5 of plaintiff's memorandum.)

It seems to be quite academic that an instrument which binds one party for a

definite period of time, and under the terms of which the other party can free itself of any obligation thereunder at any moment that party elects to do so, is lacking in mutuality. Strobe v. Netherland Co., 245 App.Div. 573, 283 N.Y.S. 246–252.

But, if we assume that there is an oral contract as urged by the plaintiff, the time for the performance of the agreement is not definitely stated. By its terms, it is possible that the contract would run for many years. The plaintiff seeks damages for a period of years. This contract under such conditions could not be valid unless it was in writing. Section 31, subd. 1, of the Personal Property Law (Consol.Laws, N.Y. c. 41), provides that any contract which by its terms is not performed within a year must be in writing. Major v. Kollmorgen Optical Corporation, 139 Misc. 219, 248 N.Y.S. 237.

Paragraphs 3 and 4 of the letter of June 22, 1934, make provision for a different rate of commission under certain circumstances to be mutually agreed upon by both parties. This letter, the plaintiff states, corroborates the oral arrangements made. These two paragraphs, being indefinite in their nature, cannot form the basis of any contractual obligation.

Leaving these three points for the moment, the plaintiff finds himself in an unenviable position. Courts in general frown upon contracts of this nature. There seems to be bad faith on the part of the plaintiff, almost amounting to fraud. The plaintiff made a representation to the defendant that Farr & Co. had appointed it their authorized agent. Plaintiff led the defendant to believe that Farr & Co. was ready to cancel their agreement with the defendant unless a commission was paid by the defendant to the plaintiff. The plaintiff was cognizant of· the fact that a valid subsisting contract existed between the defendant and Farr & Co. This agreement had been in effect for quite some time. With full knowledge of this contract and for purely selfish purposes, the plaintiff threatened to destroy the existing agreement between the defendant and Farr & Co. unless a commission was paid to the plaintiff. This was a wrongful act and the plaintiff should not be permitted to make a substantial gain thereby. Campbell v. Gates, 236 N.Y. 457, 141 N.E. 914.

A person who enters into an agreement with another seeking to obtain for himself the promised advantage which had been contracted to another has conducted himself in a vicious manner with an evil tendency. It should not be encouraged by the courts. Reiner v. North American Newspaper Alliance, 259 N.Y. 250, 181 N. E. 561, 83 A.L.R. 23.

That there is, too, a lack of consideration is apparent from a careful analysis of the facts. The plaintiff's brief states that the consideration for the agreement was mutual promises made to each other. The plaintiff further contends that the promises made by the defendant were definite, certain, and obligatory upon its part. On the other hand, the plaintiff, by resuming the solicitation of the stevedoring business of Farr & Co., could void the agreement. (Page 5 of plaintiff's memorandum.)

Promises are not binding unless they are obligatory on the part of both parties to the contract. There is a lack of consideration when that occurs.

A reading of the case of Strobe v. Netherland Co., supra, is authority for this view. The language of that decision is clear and unequivocal and states as follows:

" 'A promise is a good consideration for a promise. But no promise constitutes such a consideration which is not obligatory upon the party promising.' * * *

"The promises of neither party are binding unless those of both are obligatory."

The court accordingly directs a verdict in favor of the defendant.