F. JACOBUS TRANSPORTATION COMPANY, Inc., as charterer in possession of THE Scow DOROTHY CREAN, Libellant,

v.

GALLAGHER BROTHERS SAND & GRAVEL CORPORATION, Respondent.

United States District Court
S. D. New York.
March 26, 1958.

508

Mahar & Mason, New York City, for libelant. Frank C. Mason, James J. Mason, New York City, of counsel.

Foley & Martin, New York City, for respondent, Edward J. Ryan, New York City, of counsel.

HERLANDS, District Judge.

The questions before the Court are presented by exceptions filed to the second and third affirmative defenses contained in the respondent's second amended answer. For the reasons expressed in this opinion, the exception to the second defense is overruled, and the exception to the third defense is sustained.

## I.

This is a libel for damage to the scow Dorothy Crean. The libel alleges that, on or about November 15, 1955, the libelant chartered the Dorothy Crean to the respondent for an indefinite period, at a fixed daily rate, "with the understanding that the said scow was to be returned to the libellant by the respondent, upon the termination of the charter period in the same good condition as when received, ordinary wear and tear only excepted."

The scow was returned to libelant on or about September 5, 1956 in a badly damaged condition, not due to ordinary wear and tear, but due to the alleged result of the respondent's negligence.

## II.

The respondent's second amended answer denies the material allegations of the libel, except that it admits: (a) Prior to September 2, 1956, libelant supplied the Dorothy Crean to respondent for transportation of respondent's cargoes; (b) The scow capsized while carrying respondent's cargoes; (c) Any resulting damage was not caused by ordinary wear and tear.

The second amended answer sets up the following three affirmative defenses:

1. *The first affirmative defense:* Libelant agreed to supply a competent crew for the scow. The scow capsized while and because it was unattended. Any damage is attributable to libelant's negligence.

2. *The second affirmative defense:* For more than ten years before 1956, libelant and respondent met annually to discuss the terms and conditions under which libelant would furnish vessels to

respondent during the ensuing year for the transportation of respondent's sand and gravel. At these meetings, the parties would often alter or modify some of the terms, conditions and rates that had been in effect during the preceding year. The terms, conditions and rates not so altered were continued in force for the following year.

In February 1952, the parties agreed that libelant would insure each of the scows it supplied and respondent would be named as the assured. In March 1953, all of the terms and conditions were continued as they had been, except for rate changes.

In the spring of 1953, libelant informed respondent that it might substitute vessels other than those originally agreed upon and that none of the substitutes might be insured. The existing agreement was then "modified to the extent that, as to those vessels of libelant for which libelant did procure marine insurance, respondent was to be named as an assured *and that in any event respondent's liability for damage to a vessel supplied by libelant should not exceed such amount as was covered by insurance which respondent might have* covering its hulls, tower's liability insurance covering its tugs, and protection and indemnity insurance covering its equipment, and that respondent was not to be liable to libelant for any injury, losses or damage to a scow furnished by libelant, howsoever occurring, beyond the extent to which respondent's liability was included within such insurance." (Emphasis supplied.)

In February or March of 1954, 1955 and 1956, this particular term of the agreement was continued without change. There was no agreement as to the amount or type of insurance. Respondent's prayer is that the Court limit its liability in accordance with the foregoing contractual terms.

3. *The third affirmative defense:* Respondent invokes the limitation of liability statutes. 46 U.S.C.A. sections 182 to 186 (sections 4282 to 4286 of the Revised Statutes of the United States).

### III.

By a memorandum-order dated June 17, 1957, Judge Cashin sustained libelant's exceptions to the original second and third defenses. The basis for that decision was that the second defense contained only "vague generalities"; and that the third defense was insufficient as a matter of law, for the reason that the charter involved in the case was a demise charter and hence no limitation of liability could be asserted.

### IV.

Respondent served a first amended answer. Libelant again excepted to the second and third defenses contained therein. On October 21, 1957, Judge Ryan sustained the exceptions on the ground that said defenses failed to comply with Judge Cashin's rulings. As to the second affirmative defense, Judge Ryan said it "should state the amount of the alleged applicable insurance protection, and the particular policies of insurance concerned; * * * the dates on which the alleged agreements were made [and] whether oral or in writing * * *." As to the third affirmative defense, Judge Ryan said it "should state the factual basis for any plea of limitation and whether such a plea is based upon the alleged series of agreements or a statutory provision."

### V.

In an effort to comply with the orders of Judge Ryan and Judge Cashin, respondent has now served a second amended answer. Libelant has again filed exceptions to the second and third affirmative defenses contained therein.

Libelant claims that the second defense is insufficient as a matter of law because the contract alleged therein is void for lack of mutuality and unenforceable as vague and indefinite; and, further, that said defense fails to comply with Judge Ryan's order.

The objections to the third defense are: that it fails to comply with Judge Ryan's order; that it fails to state with particularity the circumstances entitling

respondent to claim limitation of liability; and that respondent may not claim limitation of liability under the particular kind of charter involved in this case.

## VI.

We turn now to a consideration of the latest attack on the second affirmative defense. This defense as expressed in the second amended answer complies substantially with Judge Ryan's order. Admittedly, it does not state the amount or type of insurance involved. However, respondent's position is that, because none of its vessels caused the damage (the scow capsized, according to respondent), any insurance respondent may have had on its vessels or equipment is immaterial and irrelevant. The only insurance that is pertinent to the alleged agreement is insurance procured by libelant on the scow in the name of respondent, the existence of which respondent has no knowledge. It has been noted that the second amended answer does allege the dates on which the agreements were entered into and that the agreements were oral.

Libelant attacks the validity of the contract pleaded in the second defense on two grounds. First, under the alleged contract, respondent was not obligated to purchase any insurance on its vessels or equipment and could claim complete immunity if libelant's chartered vessels were damaged by respondent's uninsured vessels or equipment. Therefore, it is argued, the contract is void for lack of mutuality. Secondly, since the agreement was to define respondent's liability, the omission of essential terms, such as the type and amount of insurance, makes the contract unenforceable by reason of its vagueness and indefiniteness.

■ It is inaccurate to analyze the problem in terms of "mutuality of obligation" or "voidness for lack of mutuality." Although "mutuality" is essential in an equity action to compel specific performance of a contract, the material inquiry in an action at law is not whether there is "mutuality" but whether there is consideration to support the other party's promise. Meurer Steel Barrel Co., Inc., v. Martin, 3 Cir., 1924, 1 F.2d 687; Electric Management & Engineering Corporation v. United Power & Light Corporation, 8 Cir., 1927, 19 F.2d 311; Hunt v. Stimson, 6 Cir., 1928, 23 F.2d 447; Robey v. Sun Record Company, Inc., 5 Cir., 1957, 242 F.2d 684; 1 Williston, Contracts section 105A (3d ed. 1957).

■ Mutuality becomes an important point of inquiry in an action at law only when there is no consideration for one party's promise other than the promise of the other party. Hunt v. Stimson, 6 Cir., 1928, 23 F.2d 447. Where consideration, other than a promise for a promise exists, mutuality is unnecessary to make the contract binding at law. Robey v. Sun Record Company, Inc., 5 Cir., 1957, 242 F.2d 684; Electric Management & Engineering Corporation v. United Power & Light Corporation, 8 Cir., 1927, 19 F.2d 311; Meurer Steel Barrel Co., Inc., v. Martin, 3 Cir., 1924, 1 F.2d 687.

All of the cases cited by libelant involved factual situations where the only consideration for the promise of one party was the promise of the other party. In each of the cited cases the court held that the promises were illusory in substance because the promisor owed no duty to the promisee and that, therefore, the contract was unenforceable for lack of consideration. Schlegel Manufacturing Company v. Peter Cooper's Glue Factory, 1921, 231 N.Y. 459, 132 N.E. 148, 24 A.L.R. 1348 [Contract to supply plaintiff with its glue requirements; plaintiff under no obligation to solicit orders to create a requirement for defendant's glue]; Transatlantic Rapid System, Inc., v. Decoulos, 1st Dept. 1946, 270 App.Div. 987, 62 N.Y.S.2d 529 [Lease of space up to 2,200 tons; no obligation to take any space]; Jarka Corporation v. Hellenic Lines, Ltd., 2 Cir., 1950, 182 F.2d 916 [Agreement to handle all of plaintiff's vessels that arrive at a certain pier; no obligation to send vessels to said pier]; Kelble Operating Corporation v. Jarka Corporation, D.C.S.D.N.Y.1937, 20 F. Supp. 647, affirmed 2 Cir., 1938, 96 F.2d

601 [Plaintiff could avoid at will its obligation not to solicit certain business that defendant was handling]; Topken, Loring & Schwartz, Inc., v. Schwartz, 1928, 249 N.Y. 206, 163 N.E. 735, 66 A. L.R. 1179 [Corporation promised to buy back its stock; but if it happened not to have any surplus, it could not do so as a matter of law]; Dennis v. Slyfield, 6 Cir., 1902, 117 F. 474 [Agreed to carry lumber of respondent whenever desired by the respondent; respondent had no obligation to ship any lumber]; Nassau Supply Co. Inc., v. Ice Service Co., Inc., 1st Dept. 1929, 226 App.Div. 368, 234 N. Y.S. 656 [Agreed to sell up to 100 tons of ice; no obligation to buy any ice].

■ In the case at bar, the insurance provision was simply one of the terms of the charter party. Basically, the charter was one for the hire and lease of scows. As one of the numerous terms and conditions of the charter, the parties agreed upon a limitation of liability. Libelant was to insure the chartered vessels; and respondent was to be named as assured. However, if libelant did not insure the chartered vessels, respondent's liability was to be limited to certain insurance carried by respondent. In any event, respondent's liability was not to exceed the amount of insurance protecting respondent, whether the insurance was procured by respondent or libelant. If libelant obtained insurance on its vessels naming respondent as assured and a vessel was damaged, libelant could collect up to the amount of insurance libelant had obtained. If libelant did not secure insurance on its vessels, it gambled on respondent's having insurance covering the equipment and vessels that cause the damage.

These terms were an integral part of the charter. The agreement in its entirety was supported by consideration. The agreement cannot be fragmented into its separate parts for the purpose of ascertaining whether there is consideration. The agreement must be read as one indivisible whole, defining and limiting the rights, duties, liabilities and immunities of the respective parties. The consideration supporting the integrated agreement was respondent's promise to take the chartered vessels under the agreed conditions and to pay the agreed rate. Respondent carried out its part of the agreement. Such consideration supported all the other promises, conditions and terms in the agreement.

■ In order to enforce the parties' agreement, the courts will construe it so as to find consideration or mutuality when the language is reasonably susceptible of such construction. See Carpenter Paper Co. v. Calcasieu Paper Co., Inc., 5 Cir., 1948, 164 F.2d 653; Wood v. Lucy, Lady Duff-Gordon, 1917, 222 N.Y. 88, 118 N.E. 214.

The analysis of the agreement herein demonstrates that it is not so vague and indefinite as to be unenforceable. Accordingly, the exception to the second affirmative defense is overruled.

## VII.

■■ Libelant's exception to the third affirmative defense is predicated upon the rule that, where there is a so-called demise charter, the charterer may not claim any benefit under the limitation of liability statutes—as distinguished from contractual limitation—in order to restrict his liability to the owner of the chartered vessel to whom he is under a contractual obligation to redeliver the chartered vessel. The Nat Sutton, 2 Cir., 1933, 62 F.2d 787, modified on rehearing In re W. E. Hedger Co., 2 Cir., 63 F.2d 1021. A demise charter is one under which the "control" of the vessel is taken from the owner and vested in the charterer. United States v. Shea, 1893, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403; Salmons Dredging Corporation v. Herma, 4 Cir., 1950, 180 F.2d 233; Gilmore and Black, The Law of Admiralty, 215 (1957).

With respect to the question of a demise charter, respondent's brief takes inconsistent positions. On the one hand, respondent argues that the oral charter herein was not a demise charter; and that, therefore, respondent may limit its liability under the applicable statute.

On the other hand, respondent admits entering into a demise charter but asserts that, *by contract* the parties agreed upon a limitation of liability. Thus, respondent's brief states: "A demise charterer has heavy obligations with respect to the vessel demised to it. * * Respondent was unwilling to accept these responsibilities"; and that, therefore, the parties entered into a limitation of liability agreement. It is to be noted that this theory of defense—based on a contractual limitation of liability—is the gist of the second affirmative defense.

, A close reading of all of the affirmative defenses indicates that the charter herein was a demise charter. The following language contained in respondent's answer lends itself to the interpretation that the vessel was in respondent's custody and control pursuant to the terms of the agreement: "libelant furnished to respondent the scow Dorothy Crean" (para. Twelfth of the second amended answer); "libelant would furnish to respondent vessels" (para. Fourteenth of the second amended answer); "scows to be supplied respondent by libelant" (id.).

Respondent may set up inconsistent defenses. It becomes necessary to examine the third defense independently. This defense incorporates by reference paragraph Fourteenth of the second amended answer. The language of paragraph Fourteenth set forth above is thereby applicable to the third defense and, consequently, the same inferences may be drawn as to the existence of a demise charter.

■ Were the above-stated language the only indication of the nature of the charter, the Court would be unable to conclude that the charter was a demise charter. The inference the Court has drawn may be explained or contradicted by other facts. The Court cannot, on an exception to a libel or answer, determine issues of fact.

■ However, inspection of all the pleadings shows that the third defense is inappropriate in this case. Libelant does not rely on any specific act or acts of negligence. The libel alleges that respondent failed to return the scow in the same good condition as received, except for ordinary wear and tear, and that the loss and damage to the scow was due to the "negligence of the respondent." If libelant had intended to rely on specific acts of negligence, it would have been incumbent on libelant to set forth such acts in the libel with particularity. (See United States Supreme Court Admiralty Rules, Rule 22, 28 U.S.C.A.: "The libel shall also * * * allege * * * the various allegations of fact upon which the libelant relies in support of his suit, so that the respondent * * * may be enabled to answer distinctly and separately the several matters contained in each article; * * *." Libelant is not relying on specific acts of negligence but bases its case on a presumption of negligence which in turn is premised on the existence of a demise charter.

■ The theory of the libel is that, since respondent was the bailee of the scow by virtue of the demise charter, it must explain the reason for the damage to the scow and demonstrate that it was not the cause of it. See, e. g. O'Donnell Transp. Co. v. M. & J. Tracy, Inc., 2 Cir., 1945, 150 F.2d 735, 737; Edward G. Murray Lighterage & Transp. Co., Inc., v. Pennsylvania R. R., 2 Cir., 1942, 130 F.2d 199; The E. T. Halloran, 2 Cir., 1940, 111 F.2d 571.

■ If libelant erroneously relies on the theory that this is a demise charter and that respondent has the obligation of a bailee, libelant cannot recover on the basis of this particular libel and, hence, the defense of limitation of liability would be inapplicable. If, however, libelant can rely on the theory of demise charter, respondent's liability may not be lim..ed by means of statute.

Moreover, respondent has failed to comply with Judge Ryan's order of December 21, 1957, in that respondent has not set forth the facts upon which he relies to limit liability, as required by

United States Supreme Court Admiralty Rules, Rule 51.

Accordingly, the exception to the third affirmative defense is sustained.

Settle order on notice.